**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


**ROGER MOORE,**

  **Creditor/Appellant,**

 **vs.**                                                    **Civ. No. 20-1267  JCH/JFR**

**RITO BILL SANCHEZ,**

  **Debtor/Appellee.**


**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION[1]**

**THIS MATTER** is before the Court on the Creditor/Appellant's Brief in Chief, filed

March 1, 2021, related to his appeal of the Bankruptcy Court's November 25, 2020, Opinion and

concurrent Order Quieting Title, Avoiding Judicial Lien, and Granting Other Relief.  Doc. 11.

Debtor/Appellee filed a Response on April 1, 2021.  Doc. 12.  Creditor/Appellant filed a Reply

on April 15, 2021.  Doc. 13.  Having reviewed the parties' submissions and the relevant law, and

for the reasons set forth herein, the Court finds that the Creditor/Appellant's Brief in Chief is not

well taken and recommends that the Bankruptcy Court's November 25, 2020, Opinion and

concurrent Order Quieting Title, Avoiding Judicial Lien, and Granting Other Relief be

**AFFIRMED**.

---

[1] By an Order of Reference filed December 10, 2020 (Doc. 2), the presiding judge referred this matter to the
undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate
disposition of the motions.

## I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

On June 22, 2010, Creditor/Appellant Roger Moore ("Appellant") began representing Debtor/Appellee Rito Bill Sanchez ("Appellee") in a state court child custody dispute.  Initially there was no written agreement between the parties.  Within two months of representation, however, Appellant had charged Appellee in excess of $15,000 in attorney fees and costs.  Thus, with money owing, Appellant drafted a retainer agreement and had Appellee sign it on August 26, 2010.  Under the terms of the agreement, Appellee was to pay Appellant $7,000 within three weeks, which he did, and Appellant agreed to voluntarily reduce his fee by $3,700. After the payment and reduction were applied, Appellee's balance due as of September 15, 2010, was approximately $5,100.  The terms of the agreement called for interest on all unpaid fees of 2% per month.  The agreement also included language purporting to grant Appellant a charging lien on all of Appellee's real and personal property for any outstanding attorney fees and related expenses and costs incurred as a result of Appellant's representation.

On October 20, 2010, Appellant moved to withdraw as Appellee's attorney.  On December 16, 2010, the state court judge granted Appellant's motion.

On January 21, 2011, Appellant sued Appellee in state court to collect unpaid attorney fees and foreclose the lien(s) mentioned in the retainer agreement.  Doc. 3 at 85-93 (Case No. D-202-CV-201100963).[3]  Appellee did not defend the collection/foreclosure action.  On

---

[2] The Bankruptcy Clerk certified transmission of the record on appeal and index to record on appeal.  Doc. 9.  Except as otherwise noted, the relevant facts are taken from the Bankruptcy Court's August 7, 2020, and November 25, 2020, Opinions.  Doc. 7 at 57-66 and Doc. 8 at 6-18.  The factual background of this case is undisputed.  *See* fn. 15, *infra*.

[3] The Court takes judicial notice of the docket in Case No. D-202-CV-2011-00963 in the Second Judicial District Court, State of New Mexico, to consider its contents but not for the truth of the matters asserted therein.  *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

March 1, 2011, the state court entered a default judgment against Appellee for $18,732.64,[4] together with post-judgment interest at 24% per year.[5]  *Id.* at 94-95.  Three years later, on July 28, 2014, Appellant moved to foreclose on Appellee's real property, which the state court denied on December 18, 2014.[6]

Seven years later, on February 19, 2018, with the amount owing on the default judgment having ballooned to $50,073.90 due to the accrued interest, Appellant filed a *Complaint Foreclosure and Execution Upon Judgment and Judgment Lien* in a separate state court action and was again seeking to foreclose the judgment lien on Appellee's home.  Doc. 3 at 100, Doc. 4 at 1-4 (Case No. D-202-CV-2018-01389).[7]  On July 9, 2018, and July 30, 2018, respectively, Appellee, proceeding *pro se*, filed an Answer and Amended Answer.[8]  Doc. 3 at 72, ¶ 12.  On November 15, 2018, Appellee, now represented by counsel, sought leave of the Court to file a second amended answer to include several affirmative defenses and assert his statutory homestead exemption.  Doc. 6 at 21-28.  On March 6, 2019, the state court entered an order denying Appellee's motion to file a second amended answer and deferring ruling on whether Appellee could assert the homestead exemption.[9]  Doc. 6 at 29-30.

---

[4] The default judgment included $14,803.17 in damages, $515.69 in interest, $3,236.75 in attorney fees incurred to obtain the default judgment, and $177.03 in costs.  Doc. 1 at 8, fn. 5.

[5] This rate was calculated because of the contract rate of 2% per month.  Doc. 1 at 8, fn. 6.

[6] *See* fn. 8, *infra.*

[7] The Court takes judicial notice of the docket in Case No. D-202-CV-2018-01389 in the Second Judicial District Court, State of New Mexico, to consider its contents but not for the truth of the matters asserted therein.  *Johnson,* 950 F.3d at 705.

[8] On August 27, 2018, Appellee filed an *Emergency Motion to Set Aside and Vacate Default Judgment* in Case No. D-202-CV-2011-00963.  On November 2, 2018, State Court District Court Judge Denise Barela Shepherd entered an Order Denying Appellee's Emergency Motion.  Doc. 3 at 97-99.  The state court took no further action in this matter.

[9] The underlying action initiated on February 19, 2018, was otherwise unresolved when Appellee initiated his Chapter 7 Voluntary Petition.

On September 11, 2019, prompted by the state court foreclosure action, Appellee filed a *Chapter 7 Voluntary Petition* in Bankruptcy Court seeking discharge of the debt.  Doc. 3 (Bankruptcy Court  No. 19-12102-t7).  In the attached schedules, Appellee identified his house, valued at $55,300.00, and certain household items as exempt, and identified the judgment lien, albeit disputed, as a secured claim.  *Id.* at 24-28.  On October 15, 2019, the Chapter 7 trustee entered a "no asset" report.[10]  Thereafter, on November 2, 2019, Appellant filed a *Secured Creditor's Objection to the Debtor's Claimed Exemptions* arguing, *inter alia*, that Appellee's property was not exempt.  *Id.* at 69-77.  On November 4, 2019, Appellee filed a *Motion to Avoid Judicial Lien*, in which he requested the Bankruptcy Court to "avoid the fixing of the judicial lien created . . . . against his exempt real property."  Doc. 4.

On December 9, 2019, Appellant filed an adversary proceeding asserting that Appellee's requested discharge should be denied under 11 U.S.C. § 727(a) because of Appellee's failure to disclose ownership of certain vehicles in his schedules or to testify truthfully about them at his 11 U.S.C. § 341 meeting.  Doc. 8 (Bankruptcy Court Adv. No. 19-1082-t).  On February 9, 2020, Appellant filed a *Motion to Dismiss Chapter 7 Bankruptcy Petition Due to Concealment of*

---

[10] The docket entry states as follows:

> Chapter 7 Trustee's Report of No Distribution: I, Edward Alexander Mazel, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. **Meeting of Creditors Held and Concluded.** Debtor appeared. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 month. Assets Abandoned (without deducting any secured claims): $ 59805.85, Assets Exempt: Not Available, Claims Scheduled: $ 51126.90, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 51126.90. THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED. (Mazel, Edward) (Entered: 10/15/2019 at 11:26:12)

Bankruptcy Court No. 19-12102-t7, Doc. 8.

*Assets and False Statements by Debtor* in the bankruptcy proceeding.  Doc. 6 at 62-66.  On

August 7, 2020, Bankruptcy Judge David T. Thuma, having consolidated Appellant's Motion to

Dismiss filed in the bankruptcy proceeding with Appellant's Amended Complaint filed in the

adversary proceeding, entered an Opinion in which he concluded that

> the motion to dismiss should not be granted but that the discharge must be denied
> under § 727(a)(2) and (a)(4).[11]  The Court will deny or defer ruling on Plaintiff's
> other requested relief, and also will defer ruling on Debtor's quiet title
> counterclaim.  The deferred issues will be determined in connection with Debtor's
> motion to avoid Plaintiff's judgment lien under § 522(f).

Doc. 11-1 at 17.  In Judge Thuma's factual findings, he indicated his concerns *sua sponte* that the

retainer agreement entered into by the parties did not appear to comply with the New Mexico

---

[11] 11 U.S.C. § 727 states in pertinent part that

> (a)  The Court shall grant the debtor a discharge, unless –
>
> . . .
>
> (2)  the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate
> charged with custody of property under this title, has transferred, removed, destroyed,
> mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated,
> or concealed –
>
> > (A)  property of the debtor, within one year before the date of the filing of the
> > petition; or
> >
> > (B)  property of the estate, after the date of the filing of the petition;
>
> . . .
>
> (4)  the debtor knowingly and fraudulently, in or in connection with the case –
>
> > (A)  made a false oath or account;
> >
> > (B)  presented or used a false claim;
> >
> > (C)  gave, offered, received, or attempted to obtain money, property, or advantage,
> > or a promise of money, property, or advantage, for acting or forbearing to act; or
> >
> > (D)  withheld from an officer of the estate entitled to possession under this title,
> > any recorded information, including books, documents, records, and papers,
> > relating to the debtor's property or financial affairs.

11 U.S.C. § 727(a)(2) and (a)(4).

Rules of Professional Conduct because (1) it was not entered into within a reasonable time after commencing the representation; and (2) the 24% annual interest rate was questionably an "unreasonable expense."  Doc. 8 at 7, fns. 2, 3 (citing NMRA 16-105(A) and (B)).  Judge Thuma indicated the Bankruptcy Court would deal with the "unreasonable expense" issue when it addressed Appellee's *Motion to Avoid Judicial Lien*.  *Id.*  Judge Thuma further indicated and explained that the charging lien Appellant filed in the underlying state court action was "improper and legally ineffective," and "did not grant [Appellant] a consensual lien on the house."  *Id.* at 8, fn. 5.  Lastly, Judge Thuma noted that a notice of lis pendens Appellant filed against Appellee's house on August 27, 2014, was improper because final judgment had been entered and because the default judgment did not concern the house.  *Id.* at fn. 6.

In Judge Thuma's concurrent judgment, he ruled as follows:

1.  The Debtor's discharge is DENIED under 11 U.S.C. § 727(a)(2) and (a)(4).

2.  Plaintiff asked in Count II of the Amended Complaint that the Court deny Debtor's homestead exemption because the homestead is subject to a consensual lien that takes priority.  The Court finds that there is no consensual lien on Debtor's homestead, so the requested relief is DENIED.

3.  Plaintiff asks in Count III of the Amended Complaint that the Court deny Debtor's homestead exemption based on the states court's order denying Debtor's motion to file an amended answer.  The Court has reviewed the order and concludes that it does not provide any basis of denying Debtor's homestead exemption. Accordingly, the Court DENIES the requested relief.

4.  Plaintiff asks in Count IV of the Amended Complaint that the Court deny Debtor's homestead exemption because Debtor undervalued the homestead.  The Court DENIES WITHOUT PREJUDICE the requested relief and will take up the matter of valuation at the final hearing on Debtor's pending Motion to Avoid Judicial Lien.  . . .

5.  Debtor asks in its counterclaim that the Court quiet title in the homestead in Debtor.  Although it appears that Plaintiff's attorney charging lien and first notice of lis pendens are invalid and should not remain as clouds on the title, the Court will reserve those issues for the final hearing on the § 522(f) Motion.  The requested relief in therefore DENIED WITHOUT PREJUDICE.

Doc. 8 at 20-21.

On November 25, 2020, Judge Thuma entered his Opinion on Appellee's *Motion to Avoid Judicial Lien*.  Doc. 7 at 57-66.  He concluded that Appellant's judgment lien should be avoided in its entirety because the value of Appellee's house on the petition date was worth no more than Appellee's asserted homestead exemption.  *Id.* at 60-63. Judge Thuma, therefore, granted Appellee's request that the Bankruptcy Court quiet title to his house.  *Id.* at 65. Judge Thuma also concluded that Appellant could not otherwise enforce the default judgment without violating the New Mexico Rules of Professional Responsibility.  *Id.* at 63-65.

In concluding that Appellant could not enforce the default judgment without violating the New Mexico Rules of Professional Responsibility, Judge Thuma relied on the Bankruptcy Court's inherent authority to oversee the practice of lawyers appearing before it.  Doc. 7 at 64, fn. 11.  Then, after citing the relevant rules concerning attorney fees, Judge Thuma explained as follows:

> The Court finds that, given the particular facts of this case, the 2% per month interest rate Moore imposed on Sanchez *ex post facto* was an unreasonable fee and/or expense.  Interest rates have been low for more than a decade.[]  If Moore was concerned that Sanchez could not pay him, the answer was to limit or terminate the representation, not charge 24% interest.  A lawyer renders highly specialized professional services for a fee; he is not in the business of making high interest rate loans to borrowers with poor credit.  This is particularly true when the representation started months before the retainer was signed and where, as here, the client is unsophisticated and has limited ability to read and write.  If any interest was to be charged at all, it should have been at a rate no higher than needed to compensate Moore for the time value of money.
>
> Moore is an experienced, able attorney.  It looks terrible when a stalwart member of the bar charges an unsophisticated client a very high rate of interest, gets a default judgment against him that accrues interest at the same high rate, waits years for the judgment debt to mushroom, and then tries to take the client's house through foreclosure.[]  Such actions bring dishonor to an honorable profession.  No lawyer should try to take a poor man's house to pay a fee, especially if most of the fee is accrued interest.  Because Moore's judgment against Sanchez is primarily for

unpaid interest that accrued at 24%, the Court concludes that Moore cannot []
collect it without violating NMRA § 16-105(A)'s prohibition against collecting an
unreasonable fee or expense.

Doc. 7 at 64-65.

On November 25, 2020, Judge Thuma entered a concurrent *Order Quieting Title,*

*Avoiding Judicial Lien, and Granting Other Relief* reflecting the findings made in his Opinion.

Doc. 7 at 40-41.

On December 7, 2020, Appellant filed a *Notice of Appeal from Opinion and Order Filed*

*November 25, 2020,* which is now before this Court.  Doc. 1.

## II. <u>APPELLANT'S BRIEF IN CHIEF</u>

Appellant's Brief in Chief purports to assert five issues on appeal.  Doc. 11 at 7-19.

However, the five issues as presented are largely repetitive and overlapping and appear to be

tethered to a single question, *i.e.,* whether the Bankruptcy Court exceeded its authority when it

concluded that any attempt by Appellant to enforce the underlying state court default judgment

would amount to the collection of an unreasonable fee in violation of NMRA § 16-105(A) of the

New Mexico Rules of Professional Conduct and was, therefore, unenforceable.  In support of his

contention that the Bankruptcy Court exceeded its authority, Appellant contends that the

Bankruptcy Court's conclusion seeks to impose a conditional sanction against him that has no

basis in law and is not supported by the facts of the case.  Doc. 11 at 7-13.  Appellant argues that

the state court's default judgment, which included the high rate of interest in question, was valid

and final, and that the Bankruptcy Court's conclusion that it is unenforceable violates his

statutory right to execute a valid state court judgment pursuant to NMSA § 39-1-20.[12]  Doc. 11 at

---

[12] Section 39-1-20 provides that "[a]n execution may issue at any time, on behalf of anyone interested in a judgment,
within seven years after the rendition or revival of the judgment."  N.M.S.A. 1978 § 39-1-20.

7-8, 11-17; Doc. 13 at 4-7.  Appellant further argues that for the Bankruptcy Court to conclude

that the default judgment is unenforceable goes beyond its sole purpose, which is to determine

whether or not the default judgment was dischargeable, and that in doing so the Bankruptcy

Court violated the doctrines of res judicata and collateral estoppel.[13]  Doc. 11 at 8-9, 14-15, 15-

19; Doc. 13 at 5-6.

In further support of his contention that the Bankruptcy Court exceeded its authority,

Appellant argues that the Bankruptcy Court's citation to *In Re Courtesy Inns, Ltd., Inc.*, 40 F.3d

1084, 1089 (10th Cir. 1994), "has no basis in law or fact."[14]  Doc. 11 at 11-12.  Appellant

explains that "[t]here is nothing contained in the bankruptcy record, nor, which evidence that the

creditor/appellant engaged in any improper behavior, prior too [sic]; resulting in the final

Judgment entered by the Second Judicial District Court; or, before the bankruptcy court."  *Id.* at

11; Doc. 13 at 7.  Appellant asserts that at all times in the bankruptcy proceedings he engaged in

proper activities consistent with a judgment creditor protecting an enforceable final state court

judgment.  Doc. 11 at 12.  Appellant asserts that if the Bankruptcy Court believed he had

---

[13] Appellant cites *In Re Sasso*, 2016 WL 3548819 (Bankr.  D. N.M. June 21, 2016), and *Mactec, Inc. v. Gorelick*, 427 F.3d 821 (10th Cir. 2005), to support his contention that claim preclusion applies and precludes the Bankruptcy Court from concluding that the default judgment is unenforceable.  In *In Re Sasso*, a creditor's adversary proceeding resulted in the non-dischargeability of an underlying probate judgment.  2016 WL 3548819, *2 (Bankr. D.N.M. June 21, 2016).  The creditor then requested the bankruptcy court amend the underlying probate judgment based on recently discovered evidence that the debtor had converted substantially more money from the estate than was reflected in the probate judgment.  *Id.*  The bankruptcy court denied the creditor's request and explained that it must give preclusive effect to the damages amount fixed by the probate judgment.  *Id.*  In *Mactec, Inc. v. Forelick*, 427 F.3d 821 (10th Cir. 2002), the Tenth Circuit addressed whether an arbitration award, confirmed by the district court, precluded a subsequently-filed declaratory judgment action seeking a review of the original arbitrator's interpretation of a contract term.  *Id.* at 831.  The Tenth Circuit held that because there had been a final judgment on the merits involving the same parties and cause of action, and because the party seeking preclusion had a full and fair opportunity to litigate the claim in the prior suit, that the declaratory judgment action was barred by res judicata, *i.e.,* claim preclusion.  *Id.* at 831-32.  These cases do not apply here because neither of the parties challenged the existence or amount of the default judgment and the Bankruptcy Court did not amend or alter the actual amount of the default judgment.

[14] In his Reply, Appellant concedes that the Bankruptcy Court has an ongoing duty to oversee the practice of attorneys who appear before the court, but that "neither the opinion nor the order, which form the basis of this appeal, or, the response, identify any improper conduct engaged in, by the appellant before, the Bankruptcy Court, that would constitute a violation of NMRA, Rule 16-105."  Doc. 13 at 5.

engaged in improper attorney behavior or practice that it should have referred him to the appropriate attorney licensing agency.  *Id.* at 8, fn. 2.  Appellant further asserts that the Bankruptcy Court's conditional sanction exceeds what would be allowed by the disciplinary board.  *Id.* at fn. 3.

Appellee disagrees with Appellant's arguments.  Doc. 12.  On the issue of claim preclusion, Appellee asserts that the doctrine of claim preclusion is inapplicable to this case because the two court actions are different; *i.e.,* the underlying suit being a suit for unpaid attorney fees and the suit here involving an attempt to avoid a judicial lien and quiet title.  Doc. 12 at 10-12.  Appellee further asserts that Judge Thuma did not replace the underlying default judgment but merely determined that it could not be enforced.  *Id.*  Appellee also argues that Appellant failed to raise this argument with the Bankruptcy Court and urges this Court not to consider it because it is being raised for the first time on appeal.  *Id.*

On the issue of the Bankruptcy Court's inherent authority, Appellee agrees that it was within the sound discretion of the Bankruptcy Court to fashion a remedy for Appellant's violation of the New Mexico Rules of Professional Conduct.  Doc. 12 at 8-9.

Lastly, Appellee asserts that to the extent Appellant alleges Judge Thuma's decision was not supported by facts, Appellant has not provided this Court with a proper record by failing to provide a trial transcript, or alternatively to certify he does not plan to order a transcript.[15]  Doc. 12 at 12-13.

---

[15] There is no indication in Appellant's briefing that he disputes the facts as set forth in Judge Thuma's opinions. Appellant argues that Judge Thuma *ignored* certain facts in concluding that the default judgment was unenforceable, namely the validity and application of a state court final judgment and his right to execute the judgment pursuant to NMSA § 39-1-20.

### III.  <u>STANDARD OF REVIEW</u>

This Court has subject matter jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).  In reviewing the Bankruptcy Court's final judgment, the Court must "apply the same standards of review that govern appellate review in other cases."  *Country World Casinos, Inc. v. Tommyknocker Casino Corp. (In re Country World Casinos, Inc.)*, 181 F.3d 1146, 1149 (10th Cir. 1999).  Thus, questions of law are reviewed *de novo* and discretionary decisions for abuse of discretion.  *Busch v. Busch (In re Busch)*, 294 B.R. 137, 140 (B.A.P. 10th Cir. 2003) (citing *Pierce v. Underwood,* 487 U.S. 552, 558 (1988)).  The Bankruptcy Court's findings of fact bind the Court unless they are clearly erroneous.  *Id.*

Federal courts possess inherent powers necessary "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quotation omitted).  A court's exercise of its inherent powers is reviewed for an abuse of discretion.  *Id.* at 55.  A bankruptcy court's exercise of its equitable powers under § 105(a) is reviewed for abuse of discretion.  *In re Rafter Seven Ranches L.P.,* 414 B.R. 722, 731 (B.A.P. 10th Cir. 2009).  A bankruptcy court abuses its discretion if it applies the wrong legal standard or makes factual findings that are illogical, implausible, or without support in the record.  *In re Duran*, 2021 WL 3186117, at *4 (B.A.P. 9th Cir. July 27, 2021 (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).  Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.  *In re Eastburg*, 447 B.R. 624, 631 (B.A.P. 10th Cir. 2011).

# IV.  ANALYSIS

### A.    It Is Well-Settled That the Bankruptcy Court Has Inherent Authority to Regulate the Practice of Attorneys Who Appear Before It

Appellant argues that the Bankruptcy Court's reliance on its inherent authority to conclude that the default judgment is unenforceable pursuant to NMRA 16-105(A) and (B) "has no basis in law or fact" and is inapplicable here because there was nothing contained in the bankruptcy record demonstrating he engaged in improper behavior.  Appellant further argues that if the Bankruptcy Court believed he had engaged in improper attorney behavior or practice that it should have referred him to the appropriate attorney licensing agency.  The Court finds Appellant's arguments are misplaced and unavailing.

In concluding that Appellant cannot collect on his default judgment without violating the New Mexico Rules of Professional Conduct, the Bankruptcy Court noted as follows:

> The Court has the authority to inquire into this matter as part of its ongoing duty to oversee the practice of lawyers appearing before it.  *See, e.g., In Re Otero Co. Hosp. Assoc., Inc.,* 617 B.R. 699, 704-05 (Bankr. D.N.M. 2020) ("[I]t is well-settled that the bankruptcy court has inherent authority to regulate the practice of attorneys who appear before it.") (citing cases); *In re Courtesy Inns, Ltd., Inc.,* 40 F.3d 1084, 1089 (10th Cir. 1994) ("The power to maintain order and confine improper behavior in its own proceeding seems a necessary adjunct to any tribunal charged by law with the adjudication of disputes"); *In re Timberon Water and Sanitation District*, 2009 WL 367685, at *1 (Bankr. D.N.M.) (quoting *Courtesy Inns*).

Doc. 11-1 at 39, fn. 11.

Appellant states, without more, that the Bankruptcy Court's citation to *In re Courtesy Inns, Ltd., Inc.,* to assert its jurisdiction to impose what amounts to a sanction against him has "no basis in law or fact."  Doc. 11 at 11.  He similarly states in his Reply, without more, that *In Re Otero Co. Hosp. Assoc., Inc.,* is inapplicable as well.  Doc. 13 at 5.  That said, Appellant concedes in his Reply that the Bankruptcy Court has an ongoing duty to oversee the practice of lawyers who appear before the court, but that Judge Thuma's opinion and concurrent order failed

to identify any improper conduct that would constitute a violation of NMRA Rule 16-105. Doc.

13 at 5. Appellant also argues that there is nothing contained in the bankruptcy record that

evidences he engaged in any improper behavior either in the underlying court or before the

Bankruptcy Court and that at all times his behavior was proper. Doc. 11 at 11.

As an initial matter, Appellant is simply wrong that Judge Thuma's opinion failed to

identify any improper conduct that would constitute a violation of NMRA 16-105. Here, Judge

Thuma's opinion explicitly identified that the 24% per annum interest rate Appellant imposed on

Appellee in the Retainer Agreement he drafted two months after agreeing to represent Appellee

and with money already owing, was an unreasonable fee in violation of the New Mexico Rules

of Professional Conduct. Doc. 11-1 at 39. As such, Appellant's argument necessarily fails.

Additionally, Appellant's argument that there was no evidence that he engaged in

improper behavior or activities either in the underlying state court proceedings or before the

Bankruptcy Court relies on a grossly narrow view of attorney conduct that is measured by form

over substance, *i.e.,* he engaged in proper activities consistent with a judgment creditor

protecting an enforceable final state court judgment. Appellant's view, however, fails to

appreciate the broad and fundamental scope of a lawyer's code of ethics which imposes

standards of professional conduct that are meant to exist both within and well beyond the mere

mechanics of law practice. In *In re Snyder*, 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504

(1985), the Supreme Court explained that

> [t]he phrase "conduct unbecoming a member of the bar" must be read in light of
> the "complex code of behavior" to which attorneys are subject. *In re Bithoney*, 486
> F.2d 193, 324 (CA1 1973). Essentially, this reflects the burdens inherent in the
> attorney's dual obligations to clients and to the system of justice. Justice Cardozo
> once observed:
>
> > " 'Membership in the bar is a privilege burdened with conditions.'
> > [An attorney is] received into that ancient fellowship for something

more than private gain.  He [becomes] an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice."  *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 470-71, 162 N.E. 487, 489 (1928) (citation omitted).

As an officer of the court, a member of the bar enjoys singular powers that others do not possess; by virtue of admission, members of the bar share a kind of monopoly granted only to lawyers.  Admission creates a license not only to advise and counsel clients but to appear in court and try cases; as an officer of the court, a lawyer can cause persons to drop their private affairs and be called as witnesses in court, and for depositions and other pretrial processes that, while subject to the ultimate control of the court, may be conducted outside courtrooms.  The license granted by the court requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice.

Read in light of the traditional duties imposed on an attorney, it is clear that "conduct unbecoming a member of the bar" is conduct contrary to professional standards . . . or conduct inimical to the administration of justice.  More specific guidance is provided by case law, applicable court rules, and "the lore of the profession," as embodied in codes of professional conduct.

*In re Snyder*, 472 U.S. at 644; *see also Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 677, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985 ("O'Connor, J., concurring in part, dissenting in part) ("The legal profession has in the past been distinguished and well served by a code of ethics which imposes certain standards beyond those prevailing in the marketplace and by a duty to place professional responsibility above pecuniary gain.").  The Model Rules of Professional Conduct follow in the path of a number of codes and represents the American Bar Association's codification of legal ethical standards.  *United States v. Colorado Supreme Ct.,* 189 F.3d 1281, 1284–85 (10th Cir. 1999) (citations omitted).  The federal courts in analyzing conduct unbecoming to a member of the bar turn invariably to the Model Rules of Professional Conduct or other codes of professional conduct.  *In re Snyder*, 472 U.S. at 645, n. 7.

Here, Judge Thuma specifically turned to the New Mexico Rules of Professional Conduct.[16]  In doing so, he quoted the precise language from Rule 16-105 that prohibits a lawyer from making "an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses," and directs that a lawyer is responsible for communicating to the client in writing the scope of representation and the basis or rate of the fee and expenses for which the client will be responsible within a reasonable time after commencing the representation.  Doc. 11-1 at 39 (citing NMRA Rule 16-105(A) and (B)).  Judge Thuma concluded that Appellant had failed to comply with either of these rules in his representation of Appellee.  *Id.*  Judge Thuma explained Appellant's "conduct unbecoming as a member of the bar" when he detailed Appellant's actions in the course of the underlying proceedings; *i.e,* entering into a written agreement months after representation began, charging an interest rate more than 20% above the prime interest rate at the time, waiting years to collect on the judgment and allowing it to mushroom, trying to take his client's house through foreclosure, and doing all of the above to an unsophisticated client with a limited ability to read and write.  Doc. 11-1 at 39-40.  Appellant's argument, therefore, that there is no evidence that he behaved improperly in the underlying state court proceedings or before the Bankruptcy Court utterly fails to measure or account for his conduct through the broad and "complex code of behavior" to which he is subject as an officer of the court and a member of the bar.

Finally, Appellant's argument that in the face of improper attorney behavior the Bankruptcy Court should have referred him to the appropriate licensing agency is equally misplaced.  Any judge, including a bankruptcy judge, has inherent authority to discipline an

---

[16] The District of New Mexico's Local Rules of Civil Procedure provide that the New Mexico Rules of Professional Conduct apply to proceedings in this district.  D.N.M.LR-Civ. 83-9.  Those rules may be enforced pursuant to the court's inherent supervisory power over the attorneys practicing before it.  *In re Snyder*, 472 at 645, n. 6.

attorney who appears before him or her.  In addition, Bankruptcy Code § 105(a) provides a bankruptcy court with authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, and allows the court to "tak[e] action or mak[e] any determination necessary or appropriate to ... prevent an abuse of process." 11 U.S.C. § 105(a).  And, a bankruptcy court "may also possess 'inherent power ... to sanction "abusive litigation practices." ' " *Law v. Siegel,* 571 U.S. 415, 420-21, 134 S.Ct. 1188, 1191, 188 L.Ed.2d 146, 2014 WL 813702, at *5 (2014) (citing *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 375–76, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007)) (quotation marks omitted); *see also In Re Otero County Hosp. Association, Inc.,* 617 B.R. at 704-05 (It is well-settled that the bankruptcy court has inherent authority to regulate the practice of attorneys who appear before it) (citing cases); *In re Courtesy Inns, Ltd., Inc.,* 40 F.3d at 1089 ( Section 105 is "intended to imbue the bankruptcy courts with the inherent power . . . . to maintain order and confine improper behavior in its own proceedings . . . .").  Thus, while the Court agrees that the Bankruptcy Court *also* could have referred Appellant for his violations of the New Mexico Rules of Professional Conduct, the Court finds that the Bankruptcy Court did not abuse its discretion when it exercised its inherent authority to oversee the practice of lawyers appearing before it.

In sum, the Court finds the Bankruptcy Court did not abuse its discretion by exercising its inherent authority to conclude that Appellant could not collect on the default judgment he obtained in the underlying proceeding without violating NMRA § 16-105's prohibition against collecting an unreasonable fee or expense.

**B.** **The Bankruptcy Court Did Not Violate Claim and Issue Preclusion Doctrines When It Exercised Its Inherent Authority To Conclude That the Default Judgment Was Unenforceable**

Appellant also argues that the doctrines of res judicata and/or collateral estoppel, also known respectively as claim preclusion and issue preclusion, precluded the Bankruptcy Court from exercising its inherent authority to conclude that the default judgment was unenforceable.

As an initial matter, the Court is not persuaded that it should not consider Appellant's claim/issue preclusion argument as being raised for the first time on appeal, as Appellee argues. Here, there is no indication that the reasonableness of Appellant's fees or the default judgment's unenforceability in the context of Rule 16-105 was raised by either party in the bankruptcy or adversary proceedings. For example, Appellee did not raise an issue regarding the unreasonableness of Appellant's fees or the unenforceability of the default judgment generally in his *Motion to Avoid Judicial Lien*. *See* Doc. 4 at 12-13. Instead, Appellee based his motion solely on his asserted homestead exemption. *Id.* Further, Appellant detailed the procedural history of the underlying litigation in his *Secured Creditor's Objection to the Debtor's Claimed Exemptions* and made clear he was relying on the validity of the underlying state court default judgment as grounds for objecting to Appellee's claimed exemptions. *See* Doc. 3 at 71-73. It was Judge Thuma who first expressed concerns regarding the reasonableness of Appellant's attorney fee pursuant to NMRA 16-105 in his August 7, 2020, Opinion (Doc. 8 at 6-18), and it was in his November 25, 2020, Opinion (Doc. 7 at 57-66) where he made his conclusion regarding the unenforceability of the default judgment on that basis. This issue, therefore, as to the unreasonableness and unenforceability of the default judgment was raised *sua sponte* by the Bankruptcy Court.

Res judicata (claim preclusion) and collateral estoppel (issue preclusion) are common-law doctrines of finality, which serve to relieve parties of the costs and vexation of multiple lawsuits, conserve judicial resources, and prevent inconsistent decisions.  *See Allen v. McCurry*, 449 U.S. 90, 94 (1980).  "Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892 n. 5, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).  Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claims raises the same issues as the earlier suit."  *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).  Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim.  *Id.* (quoting *New Hampshire*, 532 U.S. at 748-49).

When considering whether to preclude relitigation of an issue decided in state court, the "full faith and credit" statute, 28 U.S.C. § 1738, "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the state courts from which they emerged."  *Strickland v. City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir. 1997).  In determining the preclusive effect of a state court judgment, the full faith and credit statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered."  *Nichols v. Bd. of Cty. Comm'rs*, 506 F.3d 962, 967 (10th Cir. 2007) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)).

1.     **<u>Claim Preclusion</u>**

To begin, Appellant correctly concedes that claim preclusion does not apply when considering the dischargeability of debt in bankruptcy court.  Doc. 11 at 9.  Indeed, "[t]he Supreme Court stressed that the bankruptcy court has exclusive jurisdiction to determine the nature of a debt for dischargeability purposes and concluded that applying res judicata [claim preclusion] to the dischargeability decision would undercut that jurisdiction."  *In Re Crespin*, 551 B.R. at 896-97 (citing *Brown v. Felsen*, 442 U.S. 127, 135-36, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (claim preclusion does not apply when "considering the dischargeability of debt.")).  That said, claim preclusion can apply in bankruptcy proceedings to bar the parties from relitigating the existence and amount of a debt in subsequent non-dischargeability proceedings and to bar the bankruptcy court from looking behind the default judgment to determine the actual amount of the obligation.  *In re Sherman*, 2018 WL 3617660, *6 (Bankr. D.N.M. July 26, 2018) (collecting cases).  In sum, a default judgment has no claim preclusive effect as to the dischargeability of the debt in bankruptcy proceedings, but is given claim preclusive effect as to the existence and amount of the debt.  *In re Crespin*, 551 B.R. at 898.

In light of these claim preclusive principles in the bankruptcy proceeding context, the Court finds no error in their application here.  On the one hand, Judge Thuma determined the debt was nondischargeable.  On the other hand, Judge Thuma acknowledged and did not disturb the existence or amount of the claimed debt as reflected in the state court's default judgment.  In other words, Judge Thuma did not look behind the default judgment to determine the actual amount of the obligation as Appellant argues.  To the contrary, in Judge Thuma's November 25, 2020, Opinion on Appellee's *Motion to Avoid a Judicial Lien*, Judge Thuma discussed the amount of the default judgment as of February 2018, *i.e.,* $50,073.90, and Appellant's asserted

amount as of Appellee's petition date, *i.e.,* $56,000.  Doc. 7 at 59.  Additionally, Judge Thuma

discussed and relied on this amount in the context of his analysis related to Appellee's asserted

homestead exemption and the value of Appellee's house.  *Id.* at 60-63.  Further, to be clear, the

parties here did not challenge in the bankruptcy court proceedings the existence or amount of the

debt as determined in the underlying state court proceedings.  As such, it is undisputed that there

was no attempt by the parties to either relitigate the amount of the debt or to assert new legal

theories that could have been but were not raised in the underlying proceedings – elements which

are necessary, but absent here, for the doctrine of claim preclusion to even apply beyond what

the Bankruptcy Court properly applied in this case.

Moreover, Appellant has provided no legal authority to support, nor can this Court find

any, that claim preclusion applies to the Bankruptcy Court's exercise of its inherent authority to

conclude that a default judgment is *unenforceable* for violation of professional conduct rules.

Courts have the inherent power of supervision over the bar to examine the attorney's fee for

conformance with the reasonable standards of the code of ethics.  *See In re Internet Navigator,*

*Inc*., 301 B.R. 1, 7 (B.A.P. 8th Cir. 2003) (citing *Farmington Dowel Products Co. v. Forster*

*Manufacturing Co*., 421 F.2d 61, 90-91 (1st Cir. 1969)); *see also In re Suh*, 2018 WL 2113092, at

*18 (Bankr. D.N.J. May 4, 2018) ("[I]t is within the court's inherent power of supervision over

the bar to examine the attorney's fee for conformance with the reasonable standard of the Code

of Ethics.") (quoting *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1111 (7th Cir. 1982) (collecting

cases)).

Further, bankruptcy courts have deemed contractual and attorney fee agreements

unenforceable when they violate statutes and rules of professional conduct, even in the face of a

default judgment. *See In re Webb*, 376 B.R. 765 (Bankr. W. D. Okla. July 3, 2007) (holding that

default judgment did not bar debtor's challenge to enforceability of contract in which debtor agreed to direct his monthly military pension payments to creditor in exchange for lump-sum payment and further holding that the contract was unenforceable pursuant to statute barring assignment of enlisted service member's pay); *In re Vincent*, 2006 WL 4452998, at *2 (Bankr. D. Nev. Jan. 25, 2006) (explaining there must be an enforceable right to payment created by nonbankruptcy law when determining whether underlying default judgment provided adequate basis for claim); *see generally In re Segovia*, 346 F. App'x 156 (9th Cir. 2009) (holding that bankruptcy court did not err in reducing the value of the legal services to a reasonable amount and agreeing with the bankruptcy court's finding that the fee agreement itself as to an attorney's lien violated the Rules of Professional Conduct of the State Bar of California and was, therefore, unenforceable); *In re Wright*, 138 F. App'x 690, 695-96 (5th Cir. 2005) (unpublished) (agreeing with bankruptcy court that a fee sharing agreement between attorneys was unenforceable because, even though the written contingent fee agreement with clients authorized attorney to associate with other counsel, the agreement did not set out a fee splitting arrangement between attorneys in violation of the Texas Disciplinary Rules of Professional Conduct).

Lastly, before the Bankruptcy Court in *In re Otero*, the case Judge Thuma relied upon in his November 25, 2020, Opinion, was a motion for determination of attorney fees that were collected as the result of the settlement of claims in an adversary proceeding.  617 B.R. at 702. In the motion, one attorney party asserted that the other attorney party was not entitled to fees because he had not satisfied certain requirements of Rule 16-105 of the New Mexico Rules of Professional Conduct related to fees.  *Id.* at 705.  The Bankruptcy Court stated that "[t]his Court has the inherent authority to enforce compliance with these rules by attorneys appearing before the court."  *Id.* (citing *cf. Dignity Health v. Seare* (*In re Seare*), 493 B.R. 158 (Bankr. D. Nev.

2013) (applying the Nevada Rules of Professional Conduct in sanctioning debtor's counsel for misconduct in his representation of debtor)).  The Bankruptcy Court further stated that "the Court's authority to prevent an abuse of process under 11 U.S.C. § 105 would place such a dispute within the Court's core jurisdiction because it invokes a section of title 11.[17]  *Id.; see also* 28 U.S.C. § 157(b)(1) (Proceedings "arising under title 11, or arising in a case under title 11" are core proceedings); *see also Personette v. Kennedy* (*In re Midgard Corp.*), 204 B.R. 764, 771 (10th Cir. BAP 1997) ("The term 'core proceeding,' which, under section 157(b)(1), includes matters arising under and arising in bankruptcy cases, is defined in 28 U.S.C. §157(b)(2).").  Although the Bankruptcy Court permissively abstained to exercise core jurisdiction over the fee dispute for a number of reasons, it was not before affirming its inherent authority to act had it chosen to do so.  *In re* Otero, 617 B.R. at 705-09.

Based on the foregoing, the Court finds that the Bankruptcy Court did not violate res judicata principles and did not abuse its discretion in exercising its inherent authority to regulate the practice of attorneys appearing before it and/or its authority pursuant to 11 U.S.C. § 105 to prevent an abuse of process when it concluded that the default judgment was unenforceable for violation of NMRA § 16-105's prohibition against collecting an unreasonable fee or expense.

---

[17] Appellant states that the Bankruptcy Court lacked "constitutional authority" pursuant to Rule 8018.1 to conclude that his fee was unenforceable pursuant to NMRA 16-105.  Appellant did not provide the provisions of Rule 8018.1 in his briefing; however, the Court does so here.  Rule 8018.1 states: "If, on appeal, a district court determines that the bankruptcy court did not have the power under Article III of the Constitution to enter the judgment, order, or decree appealed from, the district court may treat it as proposed findings of fact and conclusions of law."  Then, without more, Appellant argued that "[t]he foregoing applies whether the bankruptcy court was engaged in core or non-core proceedings."  Doc. 11 at 15.  The discussion that followed was a repetition of Appellant's arguments related to claim and issue preclusion and his right to execute the default judgment pursuant to NMSA 39-1-20.  Thus, Appellant's "constitutional authority" argument, without more, is undeveloped and is deemed waived.  *See Franklin Savings Corp. v. United States*, 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (failure of appellant's brief to develop argument on an issue waives that issue on appeal).

2.      **Issue Preclusion**

Appellant's argument similarly fails under issue preclusion principles.  In general, issue preclusion may be invoked when an issue was actually litigated and necessarily determined in the prior action; the cause of action was different; and the person against whom preclusion is asserted was a party in the prior action.  *In re Giron*, 610 B.R.670, 676 (Bankr.  D.N.M. Dec. 13, 2019) (citing *The Bank of New York v. Romero*, 382 P.3d 991, 998-99 (N.M. App. 2016); *In re Swanziger*, 741 F.3d 74, 77 (10th Cir. 2014)).  Issue preclusion "is not mandated in the Constitution or by statute.  Rather, it is the product of court precedent based on the court's exercise of its equitable powers."  *In Re Giron*, 610 B.R. at 677 (citing *Acacia Villa v. U.S.,* 24 Cl. Ct. 445, 448 (C. Ct. 1991)).  Thus, "[e]ven if the elements of collateral estoppel are present, the decision whether to apply the doctrine is within the discretion of the trial court."  *Id.* (citing *U.S. v. Kaytso*, 868 F.2d 1020, 1022 (9th Cir. 1988); *see also Arapahoe County Public Airport Authority v. F.A.A.*, 242 F.3d 1213, 1220 (10th Cir. 2001) (citing Acacia and Kaytso)).  Neither New Mexico nor Tenth Circuit law gives issue preclusive effect to default judgments.  *Id.* (citing *Melnor v. Corey* (*In re Corey*), 583 F.3d 1249, 1251-52 (10th Cir. 2009); *Blea v. Sandoval*, 107 N.M. 554, 558, 761 P.2d 432 (Ct. App. 1988) (citing *First State Bank v. Muzio*, 100 N.M. 98, 666 P.2d 777 (1983)); *accord* The Restatement (Second) of Judgments § 27, comment e.).  The reason for the refusal is that the relevant issues were not "actually litigated."  *Id.*

Such is the case here.  Appellant presents no evidence that the reasonableness of Appellant's fee in the context of NMRA Rule 16-105 was actually addressed by either party or litigated in the underlying state court action.[18]  For instance, the state court's order denying

---

[18] Nor did either party raise the reasonableness of Appellant's fee in the context of NMRA Rule 16-105 in the bankruptcy proceedings in an attempt to relitigate an issue already decided.  Judge Thuma raised the issue *sua sponte*.

Appellee's *Emergency Motion to Set Aside the Default Judgment* makes no mention of the reasonableness of the fee or the interest rate at issue.  Instead, the basis of the court's denial was untimeliness.  On the one hand, the court noted Appellee's failure to file a timely response to Appellant's action to collect unpaid attorney fees and foreclosure action at the time it was filed in early 2011.  On the other hand, the court indicated Appellee's failure to file a motion to set aside the default judgment until seven years later.  Doc. 3 at 97-99.  Further, the default judgment itself, which included the amounts owing and the 24% annual rate of interest on the outstanding judgment, was submitted to the court by Appellant, and there is nothing therein to indicate that the state court judge addressed the reasonableness of Appellant's fee when signing off on Appellant's submission to the court.  *Id.* at 94-95.  The sole basis for the default judgment was Appellee's failure to answer or otherwise plead to the Complaint and being in default.  *Id.* at 94. As such, there is no evidence that the reasonableness of the Appellant's fees in the context of Rule 16-105 was considered by the state court or essential to its holdings.  Thus, in the absence of an issue actually being litigated in the underlying proceedings, under New Mexico law, the court may not give issue-preclusive effect to the default judgment.

Based on the foregoing, the Court finds the Bankruptcy Court did not violate issue preclusion principles in this case or abuse its discretion by exercising its inherent authority and/or its authority pursuant to 11 U.S.C. § 105 to prevent an abuse of process when it concluded that the default judgment was unenforceable for violation of NMRA § 16-105's prohibition against collecting an unreasonable fee or expense.

## V.  <u>RECOMMENDATION</u>

For all of the foregoing reasons, the Court recommends that Appellant's Brief In Chief in which he seeks reversal of the Bankruptcy Court's conclusion that the default judgment is

unenforceable for violation of NMRA § 16-105's prohibition against collecting an unreasonable fee or expense be **DENIED**. The Court further recommends that the Bankruptcy Court's November 25, 2020, Opinion and concurrent Order be **AFFIRMED**.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**